Attorney General's Office Thank you, counsel. The case was well argued. We'll take it under advisement. We'll call our next case, Luxon Augustine v. Attorney General. Luxon Augustine v. Attorney General Good morning, your honors. My name is NG Abdelkader and I represent the petitioner, Mr. Luxon Augustine. If it may please the court, there are two issues before this court this morning. Would you like to reserve rebuttal time? Yes, I would. Thank you. Three minutes for rebuttal? Thank you. There are two issues before the court this morning. The first concern is the principle of imputation in the statute of Section 240A of the Immigration and Nationality Act. Whether or not a parent's lawful admission and residency can be imputed to an un-emancipated minor child for purposes of establishing eligibility for cancellation of removal. So we are talking about admission and we are talking about residency. Yes. We're not talking about domicile, correct? That's correct, your honor. Specifically, we're looking at the current statute, Section 240A of the INA. And we're looking at subsection 2, which requires an individual who wants to apply for cancellation of removal in removal proceedings to actually establish seven years of continuous residency after lawful admission in any status. At the time of these oral arguments, there's only one circuit court of appeals that has actually addressed this issue. And that's the Ninth Circuit Court of Appeals. And it addressed the very statute that's in question today. It addressed the very subsection that is before this court today. And that's subsection number 2, where it says that a person has to have seven years continuous residency after lawful admission in any status. And the Ninth Circuit Court of Appeals found that imputation of a parent's admission in continuous residency could occur to allow a child of that parent to establish eligibility for purposes of Section 240A. Found over rather strong dissent. That's correct, but the holding is what's determinative here. And in that holding, what the court did there is that it looked at the statute in question, and it used the Chevron framework. It used the framework that was set by the Supreme Court in the matter of Chevron. First, it looked at the statute in question. It said that the statute was silent on the issue of imputation. It did not explicitly prohibit imputation to occur for purposes of establishing eligibility. Since it was silent, it went to the second prong set forth by Chevron, which says I wasn't clear about why one would characterize a statute as being silent. It spoke with respect to residence, and the statute defines residence. Isn't that correct? And it defines it as living somewhere without respect to intent. The Ninth Circuit Court of Appeals addressed that very question, whether or not the statute was silent. It saw that, yes, residence is defined by the Immigration Act. However, it determined that the statute was silent because there was no explicit language regarding the issue of imputation. The current statute actually came in 1996 to replace the prior Section 212C. At that point, this issue of imputation had already been litigated in the courts. It said there were decisions by the Second Circuit Court of Appeals, by this Court of Appeals, and by the Ninth Circuit. And yet, when Congress implemented this new statute, it did not include a provision explicitly prohibiting imputation to occur for purposes of establishing eligibility. I'm not clear why Congress needed to do that. It introduced a new term. And residence is certainly conventionally a different concept from domicile. The Ninth Circuit Court of Appeals also addressed that in its opinion. And it found that the difference between the word domicile and residence was not so great as to be dispositive. Also, when you look at the meaning of domicile and how it was interpreted by the immigration laws at the time of the now-repealed Section 212C, for immigration purposes, domicile was actually understood to mean physical presence. This isn't necessarily what we understand it to mean at common law. However, for immigration purposes, that's the way that domicile was actually interpreted. And there is a discussion in the matter of morale by this Court, as well as in Rosario by the Second Circuit Court of Appeals. The morale decision, which I don't know the precedential value of it at this moment, but they did distinguish between residency and domicile pretty clearly, I think, right? I mean, does that really help your case? I think that morale helped this case in terms of the fact that it addresses this issue of imputation. And this Court found that imputation could occur for purposes of establishing eligibility. This Court also spoke about the fact that what's important is examining the relationship between the child and the parent to determine whether or not there was a close bond and whether or not imputation would be appropriate in that context. Well, you know, one thing that you don't have to do it right now, but your adversary rightfully pointed out, the BIA has spoken pretty clearly now in the Escobar case. How does that affect your analysis? We would submit that Escobar is an opposite to the present case before the Court. And the reason is because in Escobar, the provision that was in question there was actually subsection number one. So the statute, the current statute under INA section 240, there's three requirements that an individual needs to meet. The first requirement is they have to establish legal permanent residence for five years. The second requirement is that they have to establish seven continuous years of residency after lawful admission. And the third is that they can't have been convicted of an aggravated felony. In Escobar, the BIA was confronted with the first subsection, about five years as an LPR. And that's not the question before this Court today. The question before this Court today is whether or not we can impute for purposes of establishing eligibility for cancellation or removal the seven years of continuous residence after admission in any status. So does Escobar have any – if we use the Chevron analysis, does Escobar have any effect at all? No. In fact, the respondents' arguments are flawed. In their last-minute filing that we received two days ago, they make an argument that the law put forth by Gaspar, by the Ninth Circuit Court of Appeals, is no longer valid when they cite to the case of Brand X. However, that's not relevant because in Brand X, the Ninth Circuit Court of Appeals actually didn't use the Chevron framework. Whereas in this case, what we're saying is that Chevron should be abided to. Just as the Ninth Circuit used the Chevron casework in the matter of Gaspar, they used the Chevron framework. And what occurred is that they found that the BIA's interpretation was unreasonable. And for that purpose, they did not defer to the BIA's interpretation. And the reason why they found the BIA's interpretation to be unreasonable is because of the fact that the immigration laws place a high priority on the relationships between parents and children. Because of the fact that the BIA's old interpretation of prior case law, it allowed for imputation. And we see this in the matter of Winkins. We see this in the matter of Zamora. We see this in the matter of Hwang, where the abandonment of lawful permanent residence was actually imputed to minor un-emancipated children. Well, we do impute negative consequences. That's for sure. Isn't there a problem here that because he arrived in 95 and his father had been here since 89 and he had not been living with his father? Isn't that a real problem in terms of your domicile and your relationship argument? We would submit that it's not necessarily an issue, Your Honor, because of the fact that in Murrell, which was the case where this court determined that imputation could be allowed under the now repealed Section 212C of the INA, Murrell, the petitioner in that case also, he was a citizen of the Dominican Republic. And imputation was allowed for a period of time before he actually joined his mother, who was a green card holder in the United States of America. Counsel, the statute that applied there didn't have admitted. Now it's a new reference point, a new term. With all due respect, Your Honor, the statute in that case also had admission. And in fact, there was a difference of opinion between the BIA and the Circuit Court of Appeals on that very issue. Because under Section 212C, what it allowed for is seven years unrelinquished domicile after lawful admission. That's what the now repealed Section 212C actually calls for. And the reason why I mention that there was a longstanding dispute is because the BIA had consistently interpreted that to mean that it was seven years of domicile after admission as a lawful permanent resident, making that interpretation very restrictive. Whereas the Court of Appeals came to a different conclusion. They said that it could be seven years unrelinquished domicile in any status, even if it was temporary status. Meaning someone could come here as a visitor or on a student visa and still have established that seven years of continuous domicile. Where is admission referenced in Morrell? You can find that on, we can mention that on rebuttal. OK. For that reason, Your Honor, in addition to the holding in Gaspar, which we hold, which we would submit as good law, and we ask this court to adopt the reasoning that the Ninth Circuit followed to reach that conclusion in the matter of Gaspar. Also, if we look at the BIA's own interpretation, as previously mentioned, in the cases of Zamora, in the cases of Winkins and Fueng, we see that the abandonment of lawful permanent residents was imputed to minor children. And finally, the INA, the Immigration Law and Regulations, also places a high priority on relationships between children and their parents. I'm still puzzled and I'm not helped much by the Ninth Circuit. When we're dealing here with residence, a term that is defined by Congress as meaning actual dwelling place in fact. I still don't understand why that doesn't take it out of the shadow of the domicile doctrine, which seems to have been good law under the prior statute. Well, I'll quote from Gaspar, which the Ninth Circuit specifically said, that while former Section 212C in the current statute do indeed use different terms with respect to the seven-year residency requirement for relief, for the following reasons we conclude that in the context of the statute as a whole, this difference does not justify a departure from the INA's policy of putting a high priority on relations between permanent legal residents and their children, or from the BIA's consistent interpretation of the Immigration Laws and Regulations, as allowing for imputation of a parent's status to unemancipated minor children. But then do they explain, they don't really explain how the rest of the statute really does lead them to that conclusion, do they? Our understanding of the reasoning is that what they first do is that they look at the high priority that the Immigration Laws actually put on the relationship between parents and unemancipated children. But that can't cause you to ignore specific language that is defined, can it? I'm not sure that the Ninth Circuit Court of Appeals was actually ignoring specific language. Interestingly, they found an ambiguity. They said, our interpretation adheres to the general canon of construction that resolves ambiguities in favor of the alien. While there is no real ambiguity in the meaning of residence, as Judge Pollack notes. Is there? I believe that the ambiguity is with respect to whether or not imputation can occur for purposes of establishing eligibility. That's the way that I understood that ambiguity. But in addition, the Ninth Circuit also looked at the congressional intent. And what they said is that, whereas under the former law, 212C, you only had to establish seven years of unrelinquished domicile. Under the current law, the reason why Congress changed the language is to resolve a longstanding dispute between the BIA and the Circuit Court of Appeals. And that their intent there was not to make the interpretation more restrictive. They only replaced the statute, number one, to bar people who had been convicted of aggravated felonies to apply for cancellation or removal. And also to resolve that longstanding dispute. But Congress still wanted people to have an opportunity to apply for some kind of relief to avoid the harsh consequences of deportation. And that's what we're asking for today, is for this court to adopt a reason in Gaspar. Thank you. All right, we'll hear from you on rebuttal. Good morning, Your Honors. John Williams on behalf of the government. Augustine is statutorily ineligible for cancellation of removal according to the plain language of 8 U.S.C. section 1229B. It clearly reads under the plain language that the alien has to have been an alien lawfully admitted for permanent residence for not less than five years. And has resided, a second distinct element, has resided in the United States continuously for seven years after having been admitted in any status. And Congress replaced suspension of deportation with cancellation of removal and created these two distinct elements to make it clear and to specify what its intent was. And that's why when it was amended, these two distinct elements were made. Do we have any useful history as to where the change in language came from? Well, in Escobar, Escobar talks about why the Congress made the admission to make it distinct. And it lays out the fact that if you allow imputation to one's parent, then you allow a conflation of these two elements into one. Secondly, you don't allow an inquiry into the criminal background of a particular alien who comes over to the country and attempts to impute the father's status. So the board was clear in Escobar, and that's why the court provided to, why the government provided to this court that in no uncertain terms, it is, and this is, Escobar was a Ninth Circuit board decision. It is not following Cuevas-Gaspar. Additionally, it pointed out in Escobar that indeed it is not going to apply the Cuevas precedent in any other circuit. Is that just dicta as your adversary, I think, argues? No, it is not dicta. It is plain language in the decision of Escobar. And including in this board's decision, the board was clear in this decision that the differences between residency, admission versus domicile. And so the court can follow, and then the government would ask for deference in not only Escobar, which specifically rejects Cuevas-Gaspar, but also in the board's decision here in Augustine's case. Let me ask you about that. How does Chevron apply here, if at all? Well, it applies because the board is the best interpreter to look at the reasons and rationales, the history, the legislative intent, congressional intent as to what Congress meant and how to apply the immigration laws. It may be, but is there silence, as your adversary points out, or an ambiguity? No, absolutely not. And the language is very clear. And when you look at the language in suspension of deportation or 212C, which is a waiver, you will note the differences in the language and the facts that it is clear. I mean, the old suspension of deportation required that an alien has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application. Well, that's general. So Congress said, hey, we need to be more specific, and we need to create two elements, two distinct elements. And so the Congress was very clear here, and the board in their decisions, both in Augustine's case as well as Escobar, has taken great pain to make sure that the clarity is presented in their decisions. You see, Mr. Williams, I think these are different statutes. They're certainly different words. What puzzles me is that we don't seem to have any record of the government going to Congress and saying, look, we ought to change this language and make it more precise, or some record within Congress of the appropriate committee saying, we've got confusion here or unclarity, let's clear up the language. We simply don't have what one would generally expect, do we, in the kind of legislative tracking of where these words come from? Well, what you have, Your Honor, is the definitions in the Immigration and Naturalization Acts of residency and of lawfully admitted. And those definitions are very clear, and they're different from domicile. Yeah, but they didn't just emerge from the Potomac somewhere. Somebody wrote them. Well, that's true. And as far as having a long history before the court in these pleadings, you're correct, Your Honor, you don't have a long history. But I don't think you need a long history. I think when you look at the plain language of this new statute compared with the old statutes and compared with the definitions, and when you look at Escobar and Du Bois' decision in this matter, as well as the government's brief, it outlines some of the reasons and history and the legislative intent as to why Congress took such great pains to make these two distinct elements. What about the Ninth Circuit's concern that if admission is defined as stringently as it is, then you're requiring legal permanent residence, requiring of them more than the statute requires of non-permanent residence? Is there anything to that? I mean, it does seem like the provision for non-permanent residence where it's a physical presence, a continuous physical presence, not less than 10 years, versus the admission requiring entry with inspection and authorization, the Ninth Circuit was at least skeptical that Congress really would have wanted to do that. Doesn't that argument make some sense? Well, you're, I think, weighing two separate statutes, and so what has happened is that in one statute they found that having 10 years of continuous physical presence would satisfy that particular statute versus in this statute saying, okay, if they're a lawfully permanent resident, then five years would suffice along with seven years of continuous physical presence. But they had to have been admitted, entry with inspection and authorization. Correct, and so there are checks and balances in that statute and there are checks and balances in this statute, and I think that Congress has made it clear that in this particular statute in which Augustine has applied, they've laid out the three elements. I mean, interestingly, when you compare Cuevas with Augustine's case, Augustine's argument is really hypothetical because Augustine, and Cuevas came to the country as a one-year-old with both his parents. Augustine remained, his father comes in 1989, and Augustine remains in Haiti from 1989 until 1995, and the record's not clear with whom. He may have lived there, this is a question, and this is what happens when you open up the door to imputation and the hypothetical argument that Augustine is making. He may have lived there with his mother. See, because what he asserts is, and again, the assertion is that his father is a lawful permanent resident. The record's not clear as to that. That's Augustine's assertion. He asserts that his father came to the United States and then married someone, a woman, and then Augustine makes the argument that that's his stepfather, stepmother, and to make the argument that, well, somehow he now has two parents here in the United States. Well, in fact, he was residing in Haiti with someone, possibly his own mother, and we don't know his father's status. So it takes into consideration these factors. His father didn't testify, and Augustine admitted that he didn't come until 1995. He admitted that he was convicted in 2000. Indeed, he admitted that he wasn't even eligible for cancellation of removal before the immigration judge. You see, then he raised on appeal to the board that, I think I'm eligible for cancellation of removal, and I'm going to ask you board now to impute my father's time. And since he had not raised these issues before the immigration judge, none of these factors that he attempts to make these arguments are premised in the record. Mr. Williams, did the government—I should know the answer to this, but I don't. Did the government petition for certiorari in the Ninth Circuit case, Cuevas-Gaspar? Not to my knowledge, Your Honor. Would that suggest that the government was acquiescing in that construction of the current statute? I would not—I could not say that the government was acquiescing in that particular language because they didn't seek cert. And I would say, though, that again, going back to Escobar, that the board was very clear and very strong in its language that not only are they not going to apply Cuevas in the Ninth Circuit, they're not going to apply it in any other circuit. Well, I appreciate that the board is not attracted to Cuevas-Gaspar, but I would have thought that the Solicitor General was at least on a parity with the board as to what these statutes might mean. Well, it's clear that there's no other court of appeals circuit precedent, no court of appeals precedent, where another circuit has said that they're going to impute the status of a parent in cancellation of removal to a child who comes to the United States six years after the father, the parent that they're attempting to impute to. No other court of appeals has gone the other way either. Well, and the— My hope would be that this court of appeals would fill that gap. Create the circuit split. Well, that's—well, what I think in this instance, I hope that this court would in fact apply the precedent, which in this matter, which would be slightly, again, distinguished even so from Cuevas, since, again, the factors are such that Cuevas came as a one-year-old. And, indeed, in the other cases that counsel cites, the aforementioned Lepe, Cuevas was an extension of Lepe-Guijan, which was following the old law, 212C. And even there, Lepe came with both parents to the United States and was residing. So what you had was, even in that instance, and the government can sentence this flawed analysis, but what the Ninth was attempting to do was to address what they considered was a disability suffered by a child who actually came to the United States with their parents and had resided for all that time. The government would be satisfied, though, in this case, to have this court affirm the BIA on the ground that here the child had not been living with the parents, as distinct from Cuevas-Gaspar. As distinct and find that the Augustine is statutorily ineligible for cancellation of removal as per the clear language of the statute. And so the government would ask that this court deny the petition for review. So I guess your answer to Judge Pollack's question is you wouldn't be satisfied for us to have a factual distinction. You want us to go further. You want us to say the Ninth Circuit was wrong. Correct. Thank you, Your Honor. If there are no further questions.  That's absolutely correct. Thank you. Thank you. Did you admit that factual distinction? I think I asked you that, and you did not really think that that was that much of a distinction. Did you? With respect to the actual living with the parents longer than the five years here? We admit that that is a distinction, but we would submit that it's not materially significant to the case at bar. As I had mentioned before, in Morrell, which was before this court, the petitioner in that case also did not live with his legal permanent resident mother. He was a citizen of the Dominican Republic. He did not come into the United States until a year later. The point is that this court found that imputation in admission. But he had resided with his mother. Yes. Who had preceded him to this country by approximately four years. But he needed seven years. He needed seven years of unrelinquished domicile. So he did not become a legal permanent resident until 1989, and yet his mother actually had become a legal permanent resident in 1985. And he had lived with her. But not since 1985. She came to the United States and was a legal permanent resident in 1985. He did not join her until 1989. So the four years before he joined her, they were permitted to be imputed by this court. Who did he live with during that time? It's not clear. He was in the Dominican Republic at that time. He did not live with his mother during that period of time. All right. And by virtue of the fact that Section 212C, which is now repealed, but which was in question before this court in Morrell, it specifically says aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily, not under the order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years may be admitted. And so by virtue of the fact that this court found in Morrell that the domicile, seven years of unrelinquished domicile for an individual who is not even in the United States, could be imputed by virtue of their parent being a legal permanent resident, it also found that admission could also be imputed because that's what was required under 212C. Of course, the whole thing is under a different statutory scheme now, though. I understand that holding that case was. We're asking this court to extend its holding in Morrell to the instant case at hand. The question before this court is one of law. It's not specific only to Mr. Oginski's situation. It's one that will impact many, many immigrants who have close ties to the United States, who have close family members in the United States, and they will be adversely impacted if this court finds that imputation cannot occur. Also, the respondent raises the issue of the fact that petitioner did not raise certain arguments underneath. It bears noting that the petitioner actually proceeded pro se. He was a pro se litigant, and he did maintain, even before the immigration judge, that he was eligible for cancellation or removal, and there was a lengthy discussion between him and the trial attorney at that time in terms of his eligibility. Thank you. What we understand in Cuevas-Gaspar, I see the recital is, he asserts that he entered the United States with his parents in 1985 when he was one year old. That's correct, Your Honor. We submit that that distinction is not materially significant for purposes of finding that imputation should be permitted to occur. Because in Morrell that didn't concern us, is that the point? That was one example that we used, but yes. As a matter of principle, imputation should be allowed to occur between a parent and a child for purposes of establishing eligibility under the current statute. Thank you, Counselor, very much for your argument. It's been well argued. We'll take it under advisement. Thank you, Your Honor.